FILED

2017 Jul-25  AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DOUGLAS JEFFRIES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 2:16-cv-01987-LSC |
| WELLS FARGO & | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

Plaintiffs Douglas Jeffries ("Mr. Jeffries") and Joann Jeffries ("Ms. Jeffries") (collectively, "Plaintiffs") bring this action against Defendants Wells Fargo & Company and Wells Fargo Bank National Association (collectively, "Defendants" or "Wells Fargo"), alleging that Wells Fargo used its existing customers' personal information to open additional accounts in those customers' names without their knowledge or consent. Plaintiffs purport to represent a class of all affected Wells Fargo customers in Alabama. Before this Court are Defendants' motions to compel arbitration. (Docs. 6, 27.) For the reasons explained more fully herein, the motions are due to be granted.

## I.    BACKGROUND

On February 5, 2014, Plaintiffs opened a joint checking account and a joint savings account at their local Wells Fargo branch in Gulf Shores, Alabama. In so doing, they executed a Consumer Account Application, which stated above the signature line,

> "**I have received a copy of the applicable account agreement, the privacy policy, and the** Direct Deposit Advance Service Agreement and Product Guide\* **(as each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or before a judge.**"

(Doc. 7-2 (filed under seal) (bolded text in original).) According to Plaintiffs, they did not receive a copy of the April 1, 2013 Consumer Account Agreement upon applying for their accounts, but they did receive a package labeled "New Business Account Kit"—with the word "business" scratched through—that contained a book of deposit and withdrawal slips.

On April 25, 2014, Plaintiffs completed two Consumer Deposit Account Relationship Change Applications—one for each account—to add another individual to their accounts. That same day, Ms. Jeffries and the third individual also opened a joint checking account with Wells Fargo. The Consumer Deposit Account Relationship Change Applications and the Consumer Account Application for the new account included a bolded statement nearly identical to that on the initial Consumer Account Application Plaintiffs completed when they opened their accounts.[1] Plaintiffs used their joint checking and savings accounts regularly until August 7, 2014, when the accounts were closed. The third account held jointly by Ms. Jeffries and the other individual was in use as late as November 2016.

According to Wells Fargo, the "applicable account agreement" mentioned in the Consumer Account Application is the Consumer Account Agreement.[2] The "dispute resolution program" section of this Agreement explains that any disputes between Wells Fargo and the customer "will be resolved through the arbitration process as set forth in this part." (Doc. 7-3 at 8.) It defines "dispute" to include "any disagreement relating in any way to *services*, accounts or matters; to your use

---

[1] Accordingly, any reference to the Consumer Account Application applies equally to the Applications for all three accounts.
[2] Because the April 1, 2013, Consumer Account Agreement and the April 7, 2014, Consumer Account Agreement have identical language with respect to the "dispute resolution program," any reference to the Consumer Account Agreement applies equally to both documents.

of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s)." (*Id.* (emphasis in original).) It further provides that "[t]he arbitrator shall decide any dispute regarding the enforceability of this arbitration agreement." (*Id.*)

After opening their accounts, Plaintiffs received three Wells Fargo credit cards that, according to Plaintiffs, "they neither requested nor authorized." Plaintiffs allege that Wells Fargo told them that the first credit card was an error and requested that they return it to the bank, and Plaintiffs did so. Plaintiffs claim that they cut up the other two cards, but at some point Mr. Jeffries opened a credit card account with Wells Fargo and used this card to make two purchases in May 2014. Plaintiffs believe that they received the cards because Wells Fargo's employees used their personal information to open the credit card accounts without Plaintiffs' knowledge or consent.

Plaintiffs filed this action in Alabama state court on November 4, 2014, alleging that Wells Fargo's employees used their personal information to open additional, unauthorized accounts and purporting to represent all Alabama consumers whose personal information was also used to create such accounts. Defendants removed the case to this Court on December 13, 2016, and filed a motion to compel arbitration shortly after.

This action is one of several suits alleging similar claims against Wells Fargo that have been filed in other courts across the United States, and the plaintiffs in one such case moved to have all cases consolidated before the Judicial Panel on Multidistrict Litigation. *See In re Wells Fargo Fraudulent Account Opening Litig.*, MDL No. 2766, 2017 WL 1283679, at *1 (J.P.M.L. Apr. 5, 2017) (mem) (to be published in F. Supp. 3d). The Panel denied the motion because the parties had "reached a nationwide class settlement in principle" in *Jabbari, et al. v. Wells Fargo & Company, et al.*, No. 3:15-cv-02159-VC, currently pending in the Northern District of California. *Wells Fargo Fraudulent Account Opening Litig.*, 2017 WL 1283679, at *1. The settlement was preliminarily approved by the district court on July 8, 2017, and a class action fairness hearing is set for January 4, 2018. The *Jabbari* settlement would encompass Plaintiffs' claims in the action before this Court.

## II.   STANDARD OF REVIEW

In ruling on a motion to compel arbitration, this Court applies a standard similar to review of a motion for summary judgment. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the

minds on the agreement to arbitrate"). A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

Further, the parties appear to agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs any arbitration agreement between them. "The FAA makes enforceable a written arbitration provision in 'a contract evidencing a transaction involving commerce.'" *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (quoting 9 U.S.C. § 2). It embodies "a clear presumption . . . in favor of arbitration" by "requir[ing] the courts to enforce an arbitration provision within a contract . . . unless [the provision is] defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).

## III. DISCUSSION

### A. EXISTENCE OF AGREEMENT TO ARBITRATE

Plaintiffs' initial complaint alleged that when they opened their Wells Fargo accounts, they agreed to arbitrate any disputes with Wells Fargo. (Doc. 1-1 at 32, ¶ 34.) Plaintiffs later amended their complaint to, among other changes, remove this allegation. (*See* Doc. 18 at 7, ¶ 29.) "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Can.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); *see Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer part of the pleader's averments against his adversary." (internal quotation marks omitted)). Because Plaintiffs' amended complaint includes no such statement adopting the initial complaint, in ruling on Defendants' motion to compel arbitration, this Court must first determine whether the parties entered into an agreement to arbitrate. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 n.6 (2010) (stating that because "arbitration is strictly a matter of consent," this Court must "decide any questions concerning

the formation or scope of an arbitration agreement before ordering parties to comply with it").

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "Absent such an agreement, a court cannot compel the parties to settle their dispute in an arbitral forum." *Id.* (internal quotation marks omitted). "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." *Id.* (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)) (emphasis added). This Court applies state contract law "govern[ing] the formation of contracts" to determine whether the parties entered into a binding agreement. *Caley*, 428 F.3d at 1368. Here, the parties appear to agree that Alabama law applies.

Alabama law places the burden to prove the existence of a binding arbitration agreement on the party seeking to compel arbitration. *See Jenkins v. Atelier Homes, Inc.*, 62 So. 3d 504, 509 (Ala. 2010). Wells Fargo must therefore provide evidence with regard to each element of contract formation: offer and acceptance, consideration, and "mutual assent to terms essential to the formation of a contract." *Memberworks, Inc. v. Yance*, 899 So. 2d 940, 942 (Ala. 2004). Plaintiffs

do not argue that they did not have a banking relationship with Wells Fargo; indeed, it is undisputed that Plaintiffs opened a joint checking account and a joint savings account on February 5, 2014, in person at a Wells Fargo branch in Gulf Shores, Alabama. (Doc. 27 at 7; Doc. 30 at 7.) Rather, Plaintiffs contend that they did not agree to the terms of Wells Fargo's Customer Account Agreement—which explains Wells Fargo's "dispute resolution program" and purports to be an arbitration agreement—because they did not receive a copy of the Agreement.

However, Plaintiffs did agree to arbitrate any "disputes" with Wells Fargo pursuant to the "dispute resolution program" described in "the applicable account agreement." It is undisputed that when Plaintiffs opened their accounts with Wells Fargo in February 2014, they signed the Consumer Account Application document. (Doc. 27 at 7; Doc. 30 at 7.) Directly above the signature line, this document states, "I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**" (Doc. 7-2 (filed under seal) (bolded text in original).) Therefore, at the time Plaintiffs sought to establish a banking relationship with Wells Fargo, they received notice that Wells Fargo followed a "dispute resolution program" that would require

disputes to be resolved through arbitration, rather than litigation. "A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 380 (Ala. 2006) (citing *Ex parte Stamey*, 776 So. 2d 85, 88–89 (Ala. 2000)). Even assuming the Consumer Account Application is not a contract but merely an offer to enter into a contract, *see Ex parte Rager*, 712 So. 2d 333, 335 (Ala. 1998) ("An application for insurance is an offer to enter into an insurance contract . . . ."), the Application clearly informed Plaintiffs that disputes with Wells Fargo would be resolved through arbitration. By establishing a banking relationship with Wells Fargo and thereafter using the accounts they opened for several months, Plaintiffs expressed their assent to the "dispute resolution program." *See UBS PaineWebber, Inc. v. Brown*, 880 So. 2d 411, 414 (Ala. 2003) ("[A] person who continues a business relationship after receiving notice of an arbitration provision in the contract governing that relationship implicitly consents to arbitrate any dispute that falls within the scope of the agreement."). This is true even though Plaintiffs argue that they never received a copy of the Consumer Account Agreement containing the full terms of the program. *Am. Bankers Ins. Co. of Fla. v. Tellis*, 192 So. 3d 386, 390–91 (Ala. 2015).

B. Fraud in the Inducement

Plaintiffs next argue that Wells Fargo fraudulently induced them to enter into the arbitration agreement by concealing the fact that bank employees would open unauthorized accounts in Plaintiffs' names. An arbitration agreement "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (internal quotation marks omitted). In an effort to have this Court, rather than an arbitrator, evaluate their fraud argument, Plaintiffs purport to challenge only the arbitration agreement, rather than the entire contract. Because arbitration agreements are severable from the remainder of the contract, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* at 70–71. However, "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with" the arbitration agreement. *Id.* at 71.

Wells Fargo contends that notwithstanding Plaintiffs' challenge to the validity of the arbitration agreement, this Court cannot address Plaintiffs' argument because the Consumer Account Agreement contains a delegation provision and Plaintiffs have not specifically asserted that the delegation

provision—as opposed to the arbitration agreement—is the product of fraud. A delegation provision "is an agreement to arbitrate the 'gateway' question of 'whether [the arbitration agreement] covers a particular controversy.'" *In re Checking Account Overdraft Litig. MDL No. 2036*, 674 F.3d 1252, 1255 (11th Cir. 2012) (quoting *Rent-A-Center*, 561 U.S. at 68–69). If a contract's arbitration agreement includes a delegation provision, then a plaintiff seeking to avoid arbitration must "direct[ly] challenge" the delegation provision, rather than "the arbitration provision generally." *Parnell*, 804 F.3d at 1148 (citing *Rent-A-Center*, 561 U.S. at 72).

The arbitration agreement between Plaintiffs and Wells Fargo includes a delegation provision. First, the Consumer Account Agreement states that "[t]he arbitrator shall decide any dispute regarding the enforceability of this arbitration agreement." (Doc. 7-3 at 8.) Further, it incorporates by reference the American Arbitration Association's Commercial Arbitration Rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures R-7(a) (2013). Plaintiffs' arguments relating to the enforceability of the arbitration agreement are thus properly before an arbitrator

absent a "direct challenge" to the arbitration agreement's delegation provision. *Parnell*, 804 F.3d at 1148 (citing *Rent-A-Center*, 561 U.S. at 72).

Plaintiffs have not made a sufficiently specific challenge to the delegation provision such that this Court may address their allegations that the arbitration agreement was fraudulently induced. The extent of Plaintiffs' argument is that "absent the bank's concealment of the fraud, [Plaintiffs] would not have agreed to extinguish <u>any of their rights</u> to sue in court over the misuse of their identities." (Doc. 30 at 19 (emphasis in original).) Plaintiffs contend that this argument "specifically challenges any so-called delegation provision, because such delegation . . . would extinguish a right they have to sue in court." (*Id.* at 19–20.) However, arguments that are "silent regarding any distinction between the alleged inducements to enter the [contract] vis-à-vis the arbitration clause therein" do not qualify as "direct" or "specific" challenges. *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 998 (11th Cir. 2012). Even where a particular argument may apply to the contract as a whole, to the arbitration agreement, and to the delegation clause, the plaintiff must overtly attack the delegation clause. *See Rent-A-Center*, 561 U.S. at 74 ("It may be that had [plaintiff] challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered

by the court." (emphasis in original)); *Parnell*, 804 F.3d at 1149. It is doubtful that the mere mention of the delegation clause, without more, is such an attack. *See also Solymar Invs.*, 672 F.3d at 998 (suggesting that the mention of an "arbitration clause," without "facts regarding the arbitration clause specifically" or "differentiat[ion] between [the defendant's] allegedly fraudulent actions," is not a challenge "specific to the arbitration clause").[3] Therefore, because an arbitration agreement exists between Plaintiffs and Wells Fargo and that agreement includes a broad delegation provision, Plaintiffs must present their arguments in the arbitration proceeding.

## C. WAIVER

Finally, Plaintiffs contend that Wells Fargo, by reaching a settlement with the plaintiffs in the *Jabbari* action, waived any right to arbitrate their dispute with Plaintiffs in this case. A dispute "about whether a party, by earlier litigating in court, has waived the right to arbitrate" is "presumptively" a question for this

---

[3] *Johnson v. Wells Fargo Bank, N.A.*, No. 1:14-cv-02988-LMM, 2015 WL 12591792 (N.D. Ga. June 17, 2015), which Plaintiffs cite in support of their contention that they have specifically challenged the delegation provision, does not support Plaintiffs' argument. Unlike Plaintiffs here, the *Johnson* plaintiff "discussed in detail the cost of arbitration and then explicitly related it to the delegation clause." *Id.* at *2. He also addressed his unconscionability argument as applied to the delegation clause by "discuss[ing] the limited bargaining power he had in relation to the clause." *Id.* The *Johnson* court found that "[w]hile the allegedly prohibitive arbitration cost and the alleged bargaining power disparity may be equally applicable to all arbitration provisions, [p]laintiff specifically argues those factors make the delegation provision itself unconscionable." *Id.*

Court, rather than for an arbitrator. *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (per curiam). "A party has waived its right to arbitrate if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right and, in so acting, has in some way prejudiced the other party." *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (internal citations omitted); *see Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002).

Plaintiffs argue that a finding of prejudice is not required because the Consumer Account Agreement's waiver provision makes no mention of prejudice. (*See* Doc. 7-3 at 43 ("[T]he Bank may agree in writing (or otherwise) to waive a provision of this *Agreement*, including, without limitation, a fee (a 'waiver').").) As an initial matter, a waiver argument derived from the language of the arbitration agreement is likely more appropriately addressed by the arbitrator. *See Grigsby & Assocs.*, 664 F.3d at 1353 (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393–94 (6th Cir. 2008)). However, even assuming that Defendants' conduct need not prejudice Plaintiffs, Defendants' negotiation of a settlement in the *Jabbari* litigation does not constitute a waiver of their right to pursue arbitration against Plaintiffs.

A party waives its right to arbitrate a particular dispute if it "substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Ivax Corp.*, 286 F.3d at 1316. For example, waiver has been found where the party seeking to arbitrate has first filed suit against the other party or has participated in litigation for an extended period before moving to compel arbitration. *See id.* at 1317. Neither is true in this action because Wells Fargo filed its first motion to compel arbitration shortly after entering an appearance. Instead, Plaintiffs appear to assert that Wells Fargo's proposed nationwide class settlement—which in practical terms requires Wells Fargo to "invoke the litigation machinery" of Fed. R. Civ. P. 23 in an action brought by other plaintiffs in another district court— constitutes a waiver of Wells Fargo's contractual right to arbitration in *this* litigation with respect to *these* Plaintiffs.

In general, "[a]ttempts at settlement . . . are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (citing *Sw. Indus. Import & Export, Inc. v. Wilmod Co.*, 524 F.2d 468, 470 (5th Cir. 1975) (per curiam)). "Offers to settle, like arbitration, are to be favored, as they encourage the amicable and quick settlement of suits outside the judicial system." *Id.* Therefore, the fact that Wells Fargo has agreed to a settlement of the claims against it in the

*Jabbari* litigation does not constitute a waiver of its arbitration right. To the extent that the settlement is inconsistent with Wells Fargo's intent to arbitrate with the *Jabbari* plaintiffs because it requires the district court's approval under Fed. R. Civ. P. 23 and is pursued as a class action, the settlement has no bearing on Wells Fargo's intent to seek arbitration of the claims brought by Plaintiffs here. First, Plaintiffs have represented to this Court that they intend to opt out of the *Jabbari* settlement class when given the opportunity and continue to pursue their claims against Wells Fargo. (Doc. 39 at 2.) Additionally, according to Plaintiffs, the *Jabbari* court declined to enjoin related actions as a result of the proposed settlement. (*Id.*) If Plaintiffs prefer to resolve their claims before a district court, they may participate in the class settlement. Alternatively, they may opt out of the settlement class and present their arguments to an arbitrator in accordance with their agreement with Wells Fargo.

## IV.  CONCLUSION

For the reasons explained above, Defendants' motions to compel arbitration

(Docs. 6, 27) are due to be granted. A separate order to this effect will be entered

contemporaneously herewith.

DONE AND ORDERED ON JULY 25, 2017.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
186289